**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MONETTA MOSELEY,<br><br>        Plaintiff,<br><br>    v.<br><br>INTERNATIONAL UNION OF<br>BRICKLAYERS AND ALLIED<br>CRAFTWORKERS, *et al.*,<br><br>        Defendants. | Civil Action No. 23-2109 (CKK) |

**MEMORANDUM OPINION & ORDER**
(July 7, 2026)

In this case, *pro se* Plaintiff Monetta Moseley alleges that her former employer and its President discriminated against her and retaliated against her for engaging in protected activity. The Defendants have moved to dismiss Ms. Moseley's suit, arguing that it was not timely filed and that her complaint fails to state a claim upon which relief can be granted.  Defs.' Mot., Dkt. No. 8.  Ms. Moseley opposes the Defendants' motion.  Pl.'s Opp'n, Dkt. No. 13-1.  Upon consideration of the parties' submissions,[1] the relevant legal authority, and the entire record, the Court shall **GRANT IN PART** and **DENY IN PART** the Defendants' motion.  The Court shall dismiss Ms. Moseley's claims except for certain retaliation claims and certain claims based on race discrimination, which the Court shall allow to proceed subject to limitations described in this Memorandum Opinion.

---

[1] The Court's consideration has focused on the following documents, including the attachments and exhibits thereto:
- The Plaintiff's Complaint ("Compl."), Dkt. No. 1-1 at 2–5;
- The Defendants' Motion to Dismiss ("Defs.' Mot."), Dkt. No. 8;
- The Plaintiff's Memorandum in Opposition to the Defendant's Motion ("Pl.'s Opp'n"), Dkt. No. 13-1; and
- The Defendants' Reply in Support of its Motion to Dismiss ("Defs.' Reply"), Dkt. No. 14.

In an exercise of its discretion, the Court concludes that oral argument is not necessary to the resolution of the issues pending before the Court.  *See* LCvR 7(f).

1

## I. BACKGROUND

Monetta Moseley worked for the International Union of Bricklayers and Allied Craftworkers ("BAC") for more than 20 years, from April 2000 until October 2021. Compl. at 1. During her tenure at BAC, Ms. Moseley served as the chief shop steward for BAC's staff union. *Id.* In that role, she filed many successful grievances on behalf of union members and was an "extremely vocal advocate" for them. *Id.* For example, in March 2020, Ms. Moseley led the staff bargaining unit's negotiation efforts regarding COVID-19 safety procedures and policies, and in January 2021, Ms. Moseley and other employees sent a letter to BAC's Executive Board after BAC decided not to reopen the bargaining unit contract. *Id.* at 1–2.

Ms. Moseley, who is African American, alleges that between 2008 and 2021, BAC passed her over for many job opportunities for which she applied and was qualified, which she says BAC "typically" offered instead to "non-African Americans with less experience and seniority." *Id.*

Ms. Moseley further alleges that, in October 2021, after BAC implemented a policy requiring all employees to become vaccinated against COVID-19, BAC wrongfully required her to disclose her vaccination status, "which [led] to the Defendant attempting to escort [her] off the premises" after she stated that she had not been vaccinated *Id.* at 2; Pl.'s Opp'n at 6–7. Ms. Moseley alleges that BAC "defamed [her] character" after this incident by "spreading rumors" that Ms. Moseley had told other employees "to disobey [BAC's] instructions." *Id.* at 2.

Soon afterward, BAC suspended Ms. Moseley without pay for one week, then terminated her employment on October 12, 2021. *Id.* at 2; Charge of Discrimination, Dkt. No. 8-1 at 29–30. In November 2021, Ms. Moseley requested unemployment compensation, and BAC denied her request. Compl. at 2. Ms. Moseley alleges that "[n]o White employee terminated from [BAC] has ever been denied unemployment benefits." *Id.*

Ms. Moseley alleges that BAC implemented its COVID-19 vaccination policy in a discriminatory manner by providing its traveling employees with more time to comply with the policy than it provided to its non-traveling employees. Compl. at 2; Pl.'s Opp'n at 10. Specifically, Ms. Moseley alleges that BAC informed traveling employees in June 2021 that they would be subject to a vaccination requirement, while it informed other employees that they would be subject to the same policy only two months later, on August 19, 2021. *See* Compl. at 2; Charge of Discrimination, Dkt. No. 8-1 at 29. Both traveling and non-traveling employees were required to become vaccinated or obtain an approved medical or religious exemption by October 4, 2021, with exemption requests due on September 13, 2021. *See* Compl. at 2; Charge of Discrimination, Dkt. No. 8-1 at 29; *see also* Policy, Dkt. No. 8-1 at 24–27. Ms. Moseley notes that this timing gave non-traveling employees only 25 days to submit an exemption request and 46 days to become fully vaccinated. *See* Pl.'s Opp'n at 10.

Ms. Moseley further alleges that BAC gave only its traveling employees access to a "Vaccine Hesitancy Webinar" that could have helped employees comply with its new vaccination requirement. Pl.'s Opp'n at 10. Ms. Moseley argues that by treating traveling and non-traveling employees differently, BAC discriminated on the basis of race because none of its traveling employees were, like her, African American women. *See id.*

More than six months after her separation from employment, Ms. Moseley filed an administrative charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 12, 2022, and her charge was cross-filed with the D.C. Office of Human Rights ("DCOHR"). *See id.* at 3; Charge of Discrimination, Dkt. No. 8-1 at 29–30. Ms. Moseley alleged in her administrative complaint that BAC had discriminated against her on the basis of her race,

religion, and sex, and that it had retaliated against her "for engaging in protected activity." Charge of Discrimination, Dkt. No. 8-1 at 29–30.

Ms. Moseley received a right-to-sue letter from the EEOC on February 27, 2023. Compl. at 3; Right-to-Sue Letter, Dkt. No. 8-1 at 32–36. The right-to-sue letter stated, in relevant part, that if Ms. Moseley chose to file a lawsuit based on her charge, her lawsuit "must be filed within 90 days of [her] receipt of [the] notice." Right-to-Sue Letter at 1 (emphasis omitted). The letter further stated, "Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days." *Id.*

Ms. Moseley first attempted to file her complaint in this case in D.C. Superior Court on May 29, 2023, which was a federal holiday. *See* Pl.'s Opp'n at 8; Dkt. No. 13-2 at 2. When the Superior Court reopened for business the following day, it rejected Ms. Moseley's filing for failure to include a filing fee or fee waiver application. Dkt. No. 13-2 at 3. Ms. Moseley attempted to re-file on June 6, 2023, but her filing was again rejected for failure to include a fee waiver application. Pl.'s Opp'n at 8; Dkt. No. 13-2 at 4. On June 8, 2023, Ms. Moseley successfully filed her complaint with a fee waiver application, and it was accepted and docketed on June 9, 2023. Pl.'s Opp'n at 8; Dkt. No. 13-2 at 5–6; *see also* Dkt. No. 10 at 2 (Superior Court docket sheet noting complaint filed on June 8, 2023).

The Defendants removed Ms. Moseley's case to this Court and moved to dismiss for failure to state a claim. *See* Notice of Removal, Dkt. No. 1; Defs.' Mot., Dkt. No. 8. Ms. Moseley filed an opposition, and the Defendants filed a reply. Pl.'s Opp'n, Dkt. No. 13; Defs.' Reply, Dkt. No. 14. The Defendants' motion is ripe for decision.

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether a complaint states a claim upon which relief can be granted. To withstand such a motion, "a

4

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim clears this hurdle "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In this analysis, "the Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (per curiam) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). When resolving a motion to dismiss for failure to state a claim a court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)).

Although the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). Similarly, courts do not assume the truth of a complaint's legal conclusions. *Id.*

In this case, Ms. Moseley is proceeding *pro se*. The pleadings of *pro se* litigants are "to be liberally construed," and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). When evaluating a *pro se* complaint, the Court must read that pleading "'in light of' all filings" in the case and decide

its sufficiency based on "the facts alleged in *all* of [the *pro se* plaintiff's] pleadings." *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (quoting *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)). A *pro se* plaintiff may, "in effect, supplement [her] complaint with the allegations included in [her] opposition." *Id.*

### III. ANALYSIS

In this action, Ms. Moseley asserts claims against BAC and its President, Mr. Timothy Driscoll, under the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964, the D.C. Human Rights Act ("DCHRA"), and 42 U.S.C. § 1981. For the reasons that follow, the Court concludes that many of Ms. Moseley's claims must be dismissed, but certain of her claims of retaliation and race discrimination may proceed.

**A.      Although Ms. Moseley filed her ADA, Title VII, and DCHRA claims after their statutory deadlines, her claims are timely because equitable tolling applies.**

At the threshold, the Defendants argue that Ms. Moseley's claims under the ADA, Title VII, and the DCRHA should be dismissed as untimely. Defs.' Mot. at 5–6. Although the Court agrees that Ms. Moseley filed her complaint after some of the relevant statutory deadlines had expired, equitable tolling applies and saves these claims from untimeliness. Accordingly, the Court will not dismiss these claims as untimely.

1.      <u>Ms. Moseley filed this action after the relevant statutory deadlines for several of her claims had expired.</u>

Many of the claims that Ms. Moseley seeks to assert in this action are subject to strict statutory timeframes. Before bringing a civil action under the ADA or Title VII, a claimant must exhaust administrative remedies by filing an administrative complaint with the EEOC or an equivalent State or local agency. *See* 42 U.S.C. § 2000e-5(b), (e)(1) (setting out procedures for Title VII claims); 42 U.S.C. § 12117(a) (providing that the same procedures apply to ADA claims). If the EEOC decides not to proceed with the case, it provides a notice to the claimant, which is

6

often called a "right-to-sue" letter.  A claimant has 90 days from this notice to file a civil action against the respondent named in the administrative complaint.  42 U.S.C. § 2000e-5(f)(1).

In this case, the EEOC issued a right-to-sue letter to Ms. Moseley on February 27, 2023. Right-to-Sue Letter, Dkt. No. 8-1 at 32–36.  Because Ms. Moseley has not pled the date on which she received the letter, the Court "must fix a presumptive date of receipt for purposes of determining whether Plaintiff complied with the ninety day filing requirement." *Ruiz v. Vilsack*, 763 F. Supp. 2d 168, 171 (D.D.C. 2011) (JDB) (quoting *Anderson v. Local 201 Reinforcing Rodmen*, 886 F. Supp. 94, 97 (D.D.C. 1995) (CRR)).  Courts generally presume receipt either three or five days after a right-to-sue letter is sent.  *See Ruiz*, 763 F. Supp. 2d at 171 (noting split of authority and electing to apply the "more generous five-day presumption"); *Smith v. Salon*, No. 18-cv-2532 (TJK), 2020 WL 1429939, at *2 (D.D.C. Mar. 24, 2020) (TJK) (assuming, without deciding, that a five-day presumption may be appropriate under "particular circumstances," but electing instead to apply the "typical presumption" that the plaintiff received the right-to-sue letter three days after issuance).

Here, the timeliness analysis is unaffected by the choice between the three- and five-day presumptions.  Because Ms. Moseley did not successfully file her complaint until June 8, 2023—101 days after the issuance of the right-to-sue letter—her ADA and Title VII claims fell outside the 90-day statutory deadline regardless of whether the Court presumes that she received the letter on March 2, 2023 (three days after issuance), March 4, 2023 (five calendar days after issuance), or March 6, 2023 (five business days after issuance).  Under any of these presumptions, Ms. Moseley's deadline to file her ADA and Title VII claims was between May 31 and June 5, 2023.

Ms. Moseley's claims under the DCHRA are also subject to a statutory deadline.  When Ms. Moseley filed her original complaint in this case in 2023, the DCHRA had a one-year statute

of limitations for most discrimination claims. *See* D.C. Code § 2-1403.16(a) (eff. May 2, 2015 to Mar. 20, 2025). The D.C. Council later amended the Act to provide for a two-year statute of limitations, effective March 21, 2025. *See* Fairness in Human Rights Administration Amendment Act of 2024, D.C. Law 25-300, § 2(f), 72 D.C. Reg. 737, 3662 (Mar. 21, 2025). However, this change is not retroactive. *Rubio v. Credence Mgmt. Sols., LLC*, No. 25-cv-1784, 2026 WL 1173201, at *5 & n.3 (D.D.C. Apr. 30, 2026) (RBW); *Valentine v. George Washington Univ.*, No. 24-cv-1081, 2025 WL 2029802, at *5 n.5 (D.D.C. July 21, 2025) (RC); *see also Payne v. District of Columbia*, 722 F.3d 345, 352 (D.C. Cir. 2013) (noting that, under D.C. law, "statutes are to be construed as having only a prospective operation, unless there is a clear legislative showing that they are to be given a retroactive or retrospective effect" (quoting *Wolf v. D.C. Rental Accommodations Comm'n*, 414 A.2d 878, 880 n.8 (D.C. 1980))). Therefore, the one-year statute of limitations applies to this case.

The D.C. Superior Court accepted Ms. Moseley's complaint after the statutory deadline for her DCHRA claims. The one-year statutory time limit for Ms. Moseley's DCHRA claims began to run, at the latest, on October 12, 2021, when BAC terminated her employment. *See* Charge of Discrimination, Dkt. No. 8-1 at 29–30. This statutory time limit is tolled while an administrative complaint is pending. *See* D.C. Code § 2-1403.16(a) (eff. May 2, 2015 to Mar. 20, 2025); *Alexander v. Washington Metro. Area Transit Auth.*, 826 F.3d 544, 551 (D.C. Cir. 2016). Therefore, the Court excludes from the computation of time the 230 days between the filing of Ms. Moseley's administrative complaint on July 12, 2022, and the issuance of her right-to-sue letter on February 27, 2023. Even if the Court excludes an additional seven calendar days (five business days) on the assumption that time did not begin to run again until Ms. Moseley received the right-to-sue letter, more than one year ran against the statutory clock before Ms. Moseley filed her

complaint in Superior Court on June 8, 2023.[2]  Accordingly, Ms. Moseley did not successfully file her DCHRA claims within the statutory deadline.

Ms. Moseley's Section 1981 claim, however, is subject to a longer, four-year statute of limitations.  *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382–83 (2004); *Watson v. D.C. Water & Sewer Auth.*, No. 16-cv-2033, 2018 WL 6000201, at *4 (D.D.C. Nov. 15, 2018) (CKK), *aff'd*, 777 F. App'x 529 (D.C. Cir. 2019).  This claim is not barred by a statutory deadline.

In sum, Ms. Moseley's claims under the ADA, Title VII, and the DCHRA were filed after the relevant statutory deadlines, but Ms. Moseley's claim under Section 1981 was not.  In the next section, the Court considers whether Ms. Moseley may proceed with her late-filed claims notwithstanding the statutory deadlines.

2.    Equitable tolling applies to Ms. Moseley's claims against BAC.

Although Ms. Moseley acknowledges that she did not file her complaint within the statutory deadlines for many of her claims, she argues that this untimeliness should be excused because she attempted to file her claims in Superior Court on May 29, 2023, before the relevant statutory deadlines expired.  Pl.'s Opp'n at 8.  The Court agrees.

The Court construes Ms. Moseley's argument as a request for equitable tolling of the relevant statutory deadlines.  *See Pappas v. District of Columbia*, 513 F. Supp. 3d 64, 85 (D.D.C. 2021) (RC) (extending plaintiffs "the benefit of all reasonable inferences" by construing a related argument about timeliness as a request for equitable tolling); *Turner v. Shinseki*, 824 F. Supp. 2d 99, 111 (D.D.C. 2011) (RBW) (raising equitable tolling *sua sponte* in case brought by *pro se*

---

[2] To be precise: June 8, 2023, is 604 calendar days after October 12, 2021.  The Court excludes 230 days between the filing of Ms. Moseley's administrative complaint on July 12, 2022, and the issuance of the right-to-sue letter on February 27, 2023.  The Court assumes, without deciding, that an additional seven calendar days (five business days) are excludable after the issuance of the right-to-sue letter to allow time for Ms. Moseley to receive the letter. 604 days – 230 days – 7 days = 367 days, which is greater than one year.

plaintiff where the case fell "squarely into the category for which equitable tolling is generally intended").

Equitable tolling allows a federal court to "shelter[] the plaintiff from the statute of limitations in cases where strict application would be inequitable." *Phillips v. Heine*, 984 F.2d 489, 491 (D.C. Cir. 1993). When equitable tolling applies, it "pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014).

A plaintiff seeking the benefit of equitable tolling faces a "weighty burden." *Dyson v. District of Columbia*, 710 F.3d 415, 421 (D.C. Cir. 2013). The D.C. Circuit has instructed that courts should "toll a filing deadline 'only in extraordinary and carefully circumscribed instances.'" *Id.* (quoting *Smith–Haynie v. District of Columbia*, 155 F.3d 575, 579–80 (D.C. Cir. 1998). A petitioner is entitled this relief "only if [s]he shows (1) that [s]he has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way and prevented timely filing." *Id.* (alterations in original) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). "To count as sufficiently 'extraordinary' to support equitable tolling, the circumstances that caused a litigant's delay must have been beyond [her] control." *Menominee Indian Tribe of Wisconsin v. United States*, 764 F.3d 51, 58 (D.C. Cir. 2014) (citing *Dyson v. District of Columbia*, 710 F.3d at 422), *aff'd,* 577 U.S. 250 (2016)). Equitable tolling does not allow a court to relieve a plaintiff from "a garden variety claim of excusable neglect" or a "simple miscalculation." *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990); *Holland*, 560 U.S. at 651. However, these rules "must be applied flexibly, case by case, without retreating to 'mechanical rules' or 'archaic rigidity.'" *Menominee Indian Tribe*, 764 F.3d at 58 (quoting *Holland*, 560 U.S. at 649–50).

The filing difficulties that Ms. Moseley experienced in this case are arguably not extraordinary circumstances "beyond [her] control." *Cf. Menominee Indian Tribe*, 764 F.3d at 58. Courts apply equitable tolling "sparingly," and *pro se* status alone does not excuse untimely filing. *See Robinson v. Dep't of Homeland Sec. Off. of Inspector Gen.*, No. 20-cv-2021, 2022 WL 715466, at *4 (D.D.C. Mar. 10, 2022) (CRC), *aff'd,* 71 F.4th 51 (D.C. Cir. 2023). By waiting until nearly the very end of the relevant limitations periods to attempt to file her complaint, Ms. Moseley took the risk that her case would not be filed within the relevant timeframe. Ms. Moseley also has not identified any circumstances that prevented or discouraged her from acting sooner. *Cf. Bowden*, 106 F.3d at 438 (explaining that courts have excused late filings by parties "who were misled about the running of a limitations period" by an adversary, government official, or agency).

However, the D.C. Circuit has recognized that equitable tolling may be available to "parties, particularly those acting *pro se*, who make diligent but technically defective efforts to act within a limitations period." *Bowden v. United States*, 106 F.3d 433, 438 (D.C. Cir. 1997); *see also Irwin*, 498 U.S. at 96 (explaining that the Supreme Court has "allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period"). For example, in *Turner v. Shinseki*, 824 F.Supp.2d 99 (D.D.C. 2011), Judge Reggie B. Walton applied equitable tolling to excuse the running of a statute of limitations where a *pro se* plaintiff timely filed a complaint that was "determined to be deficient due to the plaintiff's failure to properly name all parties in the caption, properly sign the Complaint, submit the requisite number of copies, and use the correct civil cover sheet." The plaintiff re-filed the complaint 15 days later, after the statute of limitations had expired. *See id.* at 108, 111. Judge Walton concluded that because the *pro se* plaintiff "was apparently aware of the deadline and

11

sought to initiate a civil case within the allotted time period," he was entitled to equitable tolling even though his initial effort to file was unsuccessful. *Id.* at 111–12.

On balance, the Court concludes that Ms. Moseley's attempt to file her complaint in D.C. Superior Court warrants equitable tolling of the statute of limitations between the date of her first attempted filing, May 29, 2023, and the date on which the Superior Court accepted her complaint, June 8, 2023. The Court finds that Ms. Moseley acted with reasonable diligence by attempting to file her case on May 29, 2023, before the relevant statutes of limitations expired, and by re-filing successfully within the next 10 days. Ms. Moseley's initial failure to include a fee waiver application with her proposed complaint made her first filing procedurally deficient, but that deficiency—like the deficiencies that Judge Walton identified in *Turner*—is essentially a technical matter and does not indicate a lack of reasonable diligence. Because Ms. Moseley made "diligent but technically defective efforts to act within [the] limitations period," equitable tolling is appropriate in this case. *See Irwin*, 498 U.S. at 96.

Equitable tolling of the relevant statutes of limitations between May 29, 2023, and June 8, 2023, makes each of Ms. Moseley's statutory claims timely. Ms. Moseley's deadline to file her ADA and Title VII claims was no earlier than May 30, 2023.[3] Her deadline to file her DCHRA claims against BAC based on her termination was also May 30, 2023.[4] Accordingly, equitable

---

[3] These claims were required to be filed within 90 days of the issuance of the right-to-sue letter. The date 90 days from issuance of Ms. Moseley's right-to-sue letter was May 28, 2023, which was a Sunday, and May 29, 2023, was a holiday. *See* Fed. R. Civ. P. 6(a)(1)(C) (providing that if the last day of a time period "is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday"). As the Court has explained, when a plaintiff has not pled that she received a right-to-sue letter on a specific date, courts presume that the plaintiff received the letter either three or five days after its issuance and count the 90-day period from the assumed date of receipt. Under these presumptions, the deadline to file would have been between May 31 and June 5, 2023.

[4] As the Court has explained, a one-year statute of limitations applies to these claims, but that statute of limitations is tolled while an administrative complaint is pending. Ms. Moseley was terminated on October 12, 2021, and her administrative complaint was pending for 230 days. The date one year and 230 days after Ms. Moseley's termination was May 30, 2023.

tolling during the brief period between Ms. Moseley's attempted filing on May 29, 2023, and the acceptance of her complaint on June 8, 2023, preserves each these claims.

*      *      *

In sum, although Ms. Moseley filed her complaint after the statutory deadlines for several of her claims had expired, her claims against BAC are timely because equitable tolling applies for the period between May 29, 2023, when she first attempted to file her complaint in D.C. Superior Court, and June 8, 2023, when that court accepted her complaint as filed. The Court therefore proceeds to consider Ms. Moseley's claims against BAC on their merits.

**B.     To the extent that Ms. Moseley's complaint incorporates claims of discrimination on the basis of religion or sex, those claims are dismissed.**

In her administrative charge of discrimination, Ms. Moseley asserted that BAC had discriminated against her based on her religion and her sex. *See* Charge of Discrimination, Dkt. No. 8-1 at 29. To the extent that Ms. Moseley seeks to proceed with these claims in this action, they must be dismissed. *Cf.* Compl. at 3 (referencing charge of discrimination); Defs.' Mot. at 13 (arguing that Ms. Moseley's complaint "should be dismissed in its entirety"); Defs.' Reply at 7–8 (arguing that Ms. Moseley has not plausibly alleged discrimination on the basis of sex).

Ms. Moseley has not plausibly alleged a factual basis for claims of discrimination on the basis of religion or sex. Although Ms. Moseley alleges in her complaint that BAC provided relatively little time for employees to seek a religious exemption from its COVID-19 vaccination policy, she does not allege that she requested or was denied such an exemption or that BAC took any other adverse action against her because of her religion. *See* Compl. at 2. Meanwhile, although Ms. Moseley alleges that "[n]o Black woman that was employed by [BAC] received the Vaccine Hesitancy Webinar" or additional advance notice of the applicability of the new

13

vaccination policy that she alleges would have helped employees comply, she frames this allegation as a charge of discrimination on the basis of race, not sex.[5]  *See* Pl.'s Opp'n at 10.

Accordingly, any claims of discrimination on the basis of religion or sex that are incorporated in Ms. Moseley's complaint must be dismissed for failure to state a claim.

### C.   Ms. Moseley's claims of disability discrimination are dismissed for failure to state a claim.

Ms. Moseley next alleges that BAC discriminated against her based on a disability by denying her a reasonable accommodation, but the factual allegations in her submissions fail to establish that she requested an accommodation for a disability.  Because Ms. Moseley has not pled an essential element of a disability discrimination claim, this claim must be dismissed.

Under the ADA, it is a prohibited act of discrimination for an employer to fail to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A).  To make out a case of discrimination based on a failure to accommodate a disability and withstand a motion to dismiss for failure to state a claim, a plaintiff must allege that "(1) [s]he is a qualified individual with a disability within the meaning of the ADA; (2) the employer had notice of [her] disability; (3) there was some reasonable accommodation denied to [her]; and (4) such accommodation would have enabled [her] to perform the essential functions of [her] job." *Saunders v. Galliher & Huguely Assocs., Inc.*, 741

---

[5] To the extent that Ms. Moseley is alleging that BAC discriminated against her because of the combination of her race *and* her sex, for the reasons explained in Section III.F, *infra*, that claim may proceed under Title VII and the DCHRA on the same basis as her claim of race discrimination. *See Lam v. Univ. of Hawai'i*, 40 F.3d 1551, 1562 (9th Cir. 1994) (concluding that "when a plaintiff is claiming race *and* sex bias, it is necessary to determine whether the employer discriminates on the basis of that *combination* of factors, not just whether it discriminates against people of the same race or of the same sex"); *Jefferies v. Harris Cnty. Cmty. Action Ass'n*, 615 F.2d 1025, 1032 (5th Cir. 1980) (concluding that actionable discrimination "against black females can exist even in the absence of discrimination against black men or white women").

F. Supp. 2d 245, 248–49 (D.D.C. 2010) (RMC) (citing *Duncan v. Washington Metro. Area Transit Auth.*, 240 F.3d 1110, 1113 (D.C. Cir. 2001)).  Courts apply the same standards when evaluating disability discrimination claims under the DCHRA.  *See Dougherty v. Cable News Network*, 396 F. Supp. 3d 84, 96 (D.D.C. 2019) (RC).

In this case, Ms. Moseley does not allege that she requested an accommodation for a disability or that BAC denied her such an accommodation.  Ms. Moseley does allege in her opposition brief that her manager was "aware of [her] pre-existing medical conditions from prior conversations throughout her employment."  Pl.'s Opp'n at 8–9.  She further alleges that these conditions contributed to "the possibility of an adverse reaction to the vaccination."  *Id.* at 8.  However, Ms. Moseley does not specify the nature of her medical conditions or the conversations she had with her manager, and she does not allege that she requested or was denied any accommodation because of those conditions.  *See id.* at 8–9.  Instead, she alleges only that she requested that employees be given additional time to submit documentation in support of medical or religious accommodation requests.  *Id.* at 9.  Because the denial of a reasonable accommodation request is a required element of a claim of disability discrimination based on failure to accommodate and Ms. Moseley has not alleged that she made such a request, Ms. Moseley's claim of disability discrimination must be dismissed.[6]  *See Saunders*, 741 F. Supp. 2d at 248–49.

### D.    Ms. Moseley's claims of retaliation may proceed in part.

Ms. Moseley next alleges that BAC retaliated against her for her leadership role in advocating on behalf of BAC's staff union bargaining unit, including by turning down her

---

[6] Because the Court concludes that Ms. Moseley has not alleged that she requested an accommodation for her disability, the Court does not resolve the separate question of whether Ms. Moseley's allegations in her opposition brief regarding "pre-existing medical conditions" that contributed to "the possibility of an adverse reaction to the vaccination" are sufficient to state a claim that Ms. Moseley had a disability or that BAC was aware that she had a disability.  *Cf.* 42 U.S.C. § 12102(2)(A) (defining "disability" as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual"); Defs.' Mot. at 8 (arguing that Ms. Moseley has failed to allege a disability because she has not alleged any condition that "substantially limits" a "major life activity").

applications for jobs for which she applied, by implementing certain new policies, and by terminating her employment in October 2021. *See* Pl.'s Opp'n at 3–5; Compl. at 1.

To state a retaliation claim under Title VII, Section 1981, the ADA, and the DCHRA, a plaintiff must allege that she engaged in protected activity, that her employer took a materially adverse employment action against her, and that there was a causal link between the protected activity and the adverse action. *Spence v. United States Dep't of Veterans Affs.*, 109 F.4th 531, 539 (D.C. Cir. 2024) (Title VII), *cert. denied*, 145 S. Ct. 594 (2024); *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 578 (D.C. Cir. 2013) (Section 1981); *Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005) (ADA); *Carpenter v. Fed. Nat. Mortg. Ass'n*, 174 F.3d 231, 236 n.3 (D.C. Cir. 1999) (DCHRA).

The Defendants argue that Ms. Moseley's advocacy on behalf of her bargaining unit is not a "protected activity" under these statutes, which protect only actions taken in opposition to discrimination. Defs.' Reply at 11. However, drawing all reasonable inferences in Ms. Moseley's favor, the Court infers that at least some of Ms. Moseley's advocacy was specifically aimed at opposing discrimination on the basis of race. *See* Compl. at 2 (alleging that the bargaining team met with BAC's representatives in September and October 2021 and "informed" them "of the disparate impact mandating the vaccine would have on [BAC's] African American employees"); Pl.'s Opp'n at 5 (noting that Ms. Moseley's bargaining unit "represents about 70% of [BAC's] Black employees, compared to only about 15% of [BAC's] White employees"). Accordingly, the Court concludes that Ms. Moseley has plausibly alleged the first element of a *prima facie* retaliation claim.

The Defendants next argue that Ms. Moseley has not alleged materially adverse employment action against her that is plausibly linked to any protected activity. Defs.' Reply at

16

11. Although the Court agrees with the Defendants that Ms. Moseley's allegations of retaliation based on BAC's decisions not to hire her for certain roles during her tenure and its changes to its generally applicable policies do not state claims upon which relief can be granted, her retaliation claim based on her termination presents a closer question.  *See id.*  Unlike Ms. Moseley's other claims, her claim based on her termination involves a very close temporal link to a specifically alleged instance of protected activity: Ms. Moseley alleges that she and other bargaining unit employees engaged in advocacy about the potential disparate impact of BAC's COVID-19 vaccination policy in September and October 2021 and that she was terminated less than one month later, also in October 2021.  Compl. at 2; *see Singletary v. District of Columbia*, 351 F.3d 519, 525 (D.C. Cir. 2003) (concluding that "quite close" temporal proximity between protected activity and material adverse action "may alone establish the required causal connection").   And unlike a change in generally applicable policy, "[t]ermination of employment clearly constitutes a materially adverse action." *Durant v. District of Columbia*, 932 F. Supp. 2d 53, 70 (D.D.C. 2013) (ABJ), *aff'd*, 875 F.3d 685 (D.C. Cir. 2017).

Drawing all reasonable inferences in Ms. Moseley's favor, the Court concludes that she has plausibly alleged that her termination in October 2021 was unlawful retaliation for her advocacy against discrimination on the basis of race.  "A plaintiff alleging retaliation faces a low hurdle at the motion to dismiss stage," and Ms. Moseley's claim that her termination was retaliatory clears that threshold.  *See Walden v. Patient-Centered Outcomes Rsch. Inst.*, 177 F. Supp. 3d 336, 343 (D.D.C. 2016) (TSC) (quoting *Winston v. Clough*, 712 F. Supp. 2d 1, 11 (D.D.C. 2010) (RBW)).  In this respect, Ms. Moseley's retaliation claims may proceed.

**E.**     **Ms. Moseley's individual-capacity claims against Mr. Driscoll under Title VII and the DCHRA are dismissed for failure to state a claim.**

Ms. Moseley asserts discrimination claims against both BAC and its President, Mr. Driscoll, which the Court construes as including a discrimination claim under Title VII of the Civil Rights Act of 1964, which prohibits employment discrimination based on "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1); *see* Compl. at 3 (stating that Ms. Moseley's claim is brought pursuant to the DCHRA, ADA, Section 1981, "and other Civil Rights Acts").

Ms. Moseley's Title VII claim against Mr. Driscoll cannot proceed because Title VII does not impose liability on an employer's agents in their individual capacities.  *Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1011 (1995).  Although a plaintiff may name an individual employee as a defendant in a Title VII suit, "that employee must be viewed as being sued in his capacity as the agent of the employer, who is alone liable for a violation of Title VII."  *Gary*, 59 F.3d at 1399.  A claim against such an employee "necessarily merges with" the corresponding claim against the employer.  *Yesudian ex rel. U.S. v. Howard Univ.*, 270 F.3d 969, 972 (D.C. Cir. 2001).  Accordingly, only BAC may be held liable for Ms. Moseley's Title VII claim, and her parallel claim against Mr. Driscoll must be dismissed.

For a different reason, Ms. Moseley's DCHRA claims against Mr. Driscoll must also be dismissed.  The Court has concluded that Ms. Moseley's DCHRA claims against BAC are timely because her administrative complaint tolled the one-year statute of limitations for those claims as to BAC, and the short period between her first attempt to file her complaint and her actual filing is subject to the doctrine of equitable tolling.  *See supra* Section III.A.  However, the same reasoning does not apply to Ms. Moseley's claims against Mr. Driscoll because Ms. Moseley's administrative complaint did not name Mr. Driscoll as a respondent.  "[W]here a plaintiff's administrative complaint expressly identified discriminatory actions taken by certain defendants

18

but not others, the administrative complaint will not serve to toll the DCHRA's statute of limitations as to claims against those defendants who were not identified in the administrative complaint." *Craig v. District of Columbia*, 74 F. Supp. 3d 349, 367 (D.D.C. 2014) (RC); *see also Zelaya v. UNICCO Serv. Co.*, 587 F. Supp. 2d 277, 285 (D.D.C. 2008) (RCL) (concluding that equitable tolling did not apply where defendants had not received "adequate notice and the statutory opportunity to mediate by service of the charges against them as identified respondents"). Because Mr. Driscoll was not identified as a respondent or named at all in Ms. Moseley's administrative complaint, her administrative complaint did not toll her proposed claims against Mr. Driscoll. Accordingly, those claims are untimely and must be dismissed.

**F.      Ms. Moseley's other claims of race discrimination may proceed.**

Finally, the Court considers Ms. Moseley's remaining claims of race discrimination in violation of Title VII, the DCHRA, and Section 1981. Drawing all reasonable inferences in Ms. Moseley's favor, the Court concludes that she has plausibly alleged that BAC's implementation of its COVID-19 vaccination policy was racially discriminatory. Accordingly, Ms. Moseley's remaining race discrimination claims regarding this policy may proceed.

As noted in the preceding section, the Court construes Ms. Moseley's discrimination claim as including a claim under Title VII, alongside claims under the DCHRA and Section 1981. *See supra* Section III.E; Compl. at 3 (stating that Ms. Moseley's claim is brought pursuant to the DCHRA, ADA, Section 1981, "and other Civil Rights Acts"). To make out a *prima facie* case of race discrimination under these statutes, a plaintiff must show that "(1) [s]he is a member of a protected class, (2) [s]he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination (that is, an inference that [her] employer took the action because of [her] membership in the protected class)." *Forkkio v. Powell*, 306 F.3d 1127, 1130 (D.C. Cir. 2002) (Title VII); *Ali v. District of Columbia*, 697 F. Supp. 2d 88, 93 n.6 (D.D.C. 2010)

19

(HHK) (same under DCHRA) (citing *Howard Univ. v. Green*, 652 A.2d 41, 45 (D.C. 1994)); *Dave v. D.C. Metro. Police Dep't*, 905 F. Supp. 2d 1, 14 (D.D.C. 2012) (RC) (same under Section 1981); *see also Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020) ("To prevail, a [Section 1981] plaintiff must initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right.").

In two related cases brought by other former BAC employees challenging their terminations based on the same vaccination policy, the D.C. Circuit concluded last year that that the employees' allegations of racially disparate impact and racially disparate treatment could proceed past a motion to dismiss because those claims crossed the line "from 'conceivable to plausible.'" *Shanks v. Int'l Union of Bricklayers & Allied Craftworkers*, 134 F.4th 585, 596–97 (D.C. Cir. 2025) (quoting *Ho v. Garland*, 106 F.4th 47, 51 (D.C. Cir. 2024)).  That conclusion controls this case.

Like the plaintiffs whose related claims the D.C. Circuit allowed to proceed, Ms. Moseley alleges that she was terminated after she did not comply with BAC's vaccination policy.  Pl.'s Opp'n at 10.  She also alleges that "because no Black women held positions that engaged in work-related travel," she and other Black women employed by BAC received less advance notice of the policy and less information about COVID-19 vaccination than other similarly situated employees. *Id.*  Ms. Moseley further alleges that BAC leaders, including Mr. Driscoll, were informed "that the vaccine mandate would cause disparate impact to Black Americans" and that BAC nonetheless "allow[ed] the punishment of mostly minority employees and the eventual termination of three Black American employees" based on the policy.  Pl.'s Opp'n at 12.

Ms. Moseley offers several additional factual allegations in support of her claims of race discrimination.  First, she alleges that Black employees who were terminated based on BAC's

20

vaccination policy were "all fired over mail," which she alleges "has never happened to any White employee of the organization." Pl.'s Opp'n at 10. Second, she alleges that these same employees "were not given severance even though White [e]mployees are typically given severance when they are terminated." *Id.* Third, she alleges that BAC denied her request for unemployment compensation, while "[n]o White employee terminated from [BAC] has ever been denied unemployment benefits." *Id.* Because the Court concludes that Ms. Moseley's allegations regarding the implementation of the vaccination policy itself state a plausible claim of race discrimination, the Court does not decide whether these additional factual allegations would independently support such a claim.

The scope of Ms. Moseley's race discrimination claims is necessarily limited by the causes of action on which she relies. Because Title VII does not create liability for individual employees in their personal capacities, Ms. Moseley's Title VII claim may proceed only against BAC, not against Mr. Driscoll. *See Gary*, 59 F.3d at 1399. Similarly, because Ms. Moseley's administrative complaint tolled the statute of limitations for her DCHRA claim only against BAC, not against Driscoll, she may proceed under the DCHRA only against BAC. *See Craig*, 74 F. Supp. 3d at 367. Finally, because Section 1981 prohibits only racially discriminatory treatment, not conduct with racially disparate impact, Ms. Moseley may recover under Section 1981 only under a disparate-treatment theory, not a disparate-impact theory. *Murray v. Gilmore*, 406 F.3d 708, 713 (D.C. Cir. 2005) (explaining that a Section 1981 claim requires a showing of "intentional discrimination"). Subject to these limitations, Ms. Moseley's race discrimination claims may proceed.

\*    \*    \*

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. The Court hereby **DISMISSES** each of Ms. Moseley's claims except for: (1) her claims that her termination in October 2021 was unlawful retaliation for her opposition to discrimination on the basis of race, which may proceed against both BAC and Mr. Driscoll under 42 U.S.C. § 1981, and which may proceed against BAC only under Title VII and the DCHRA; and (2) her claims of race discrimination, which similarly may proceed against both BAC and Mr. Driscoll under 42 U.S.C. § 1981, and which may proceed against BAC only under Title VII and the DCHRA.

The parties shall confer and file a joint status report on or before **August 7, 2026**, proposing a schedule for further proceedings.

The Clerk of the Court is respectfully directed to mail a copy of this Memorandum Opinion and Order to the *pro se* Plaintiff at her address of record.


**SO ORDERED.**

**Dated:** July 7, 2026

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

22